MAGENNIS, APPELLEE, *v.* MYERS ET AL., APPELLANTS.·

(No. 4241—Decided February 6, 1952.)

*Mr. Chester L. Dinsmore,* for appellee.

*Mr. C. F. Schnee* and *Mr. Scott Belden,* for appellants.

DOYLE, J. This is an action in equity, instituted in the Court of Common Pleas of Summit County, and there terminating in a judgment in the plaintiff's favor. Thereupon, an appeal was perfected by the defendants to this court on questions of law and fact.

A trial *de novo* has been held, and our decision with reasons here follows.

The case involves the sale of 38 lots by the state of Ohio to Marian H. Myers in a dedicated and platted allotment in the city of Akron, which lots had been, by statutory authority, forfeited to the state for nonpayment of taxes by the former owner, Frank T. Magennis. The relief sought by the said former owner is primarily a cancellation of the deed given to the purchaser, on the ground that the sale was "contrary to statute and illegal."

There is no issue created involving the legality of the proceedings of forfeiture. The sole issue relates to the procedure from there on, culminating in the deed to the purchaser.

It appears that, prior to forfeiture, each lot was separately entered on the county tax lists, wherein there was printed the name of the owner, the valuation, and the taxes due on each lot. In the statutory advertising for forfeiture to the state of Ohio, each lot with its valuation and taxes due was likewise set out. However, when the auditor advertised them for sale after the forfeiture, the separate identity of the lots, the separate valuation of each, and the individual taxes due thereon, were abandoned, and the notice only showed the lots in aggregate, the aggregate valuation, and the aggregate delinquent taxes. The following is a copy of the advertising:

"Forfeited Land Sales
"Gen'l Code, Sec. 5751 - - 4

"The lands, lots, and parts of lots, in the county of Summit, forfeited to the state for the nonpayment of taxes, together with the taxes, assessments, penalties, interest and costs charged thereon, agreeably to law, and the dates on which said lands, lots, and parts of lots will be offered for sale, are contained and described in the following list; viz.:

 

"' * * *

"April 27th—10 a. m.

"' * * *

"Magennis, Frank T. * * *, South Pk. 64, 65, 67, 68, 94 to 103 inc., 105 to 119 inc., 134 to 142 inc., all. V [Valuation] 1680. T [Taxes] $717.84."

At the sale, the lots were offered together as a group, and a single bid of $500 predicated the issuance of a certificate of purchase for the entire group; which ended in the delivery of the deed here under attack. The evidence shows that the lots were not all contiguous, nor were the lots in the following illustrated grouping contiguous: 94 to 103, inclusive; 105 to 119, inclusive; 134 to 142, inclusive. The groupings in the advertisement for sale were groupings solely through continuity of numbers.

As heretofore stated, no claim is made of irregularity in the proceedings whereby the lots were forfeited to the state for the nonpayment of taxes. Consideration therefore will be directed to an examination of the statutes giving the right to sell pursuant to a proper forfeiture to the state.

It is the claim on one side that the statutes contemplate only the sale of individual forfeited lots, and that when the words "lands," "tract," "parcel" or "lot" are used in the Code, they have no invariable meaning, and in different circumstances may vary in scope; and that the provisions of the Code are mandatory in respect to the separate sale of individually-taxed lots or tracts. To the contrary it is claimed that the statutes are directory, and that lots may be grouped for sale within the discretion of the auditor; and that "tracts" are not synonymous with "lots."

Section 5751, General Code, relates to the requirement of publication before public sale. It provides in part:

"If the taxes, assessments, penalties, interest and

costs due on the forfeited lands have not been paid when the auditor fixes the date of his annual sale, the county auditor shall cause notice thereof to be advertised once a week for two consecutive weeks * * * in two newspapers * * *. Such notice shall state that if the taxes, assessments, penalties, interest and costs charged against the lands forfeited to the state * * * are not paid into the county treasury and the treasurer's receipt produced therefor before the time specified in said notice for the sale of said lands, which day shall be named therein, *each tract*, so forfeited, on which the taxes, assessments, penalties, interest and costs remain unpaid will be offered for sale * * *.'' (Emphasis ours.)

It is obvious that, by the use of the words "each tract, so forfeited," the word "tract" was intended to apply to a lot, if the unit of land forfeited was carried on the tax duplicate as a lot in an allotment, and as such was forfeited. And it further appears to have been the intent of the Legislature that the advertising should carry the instruction to the public that the lot would be sold to pay the taxes, assessments, etc., standing against it alone. There is no language in this section, nor in Section 5754, General Code, prescribing the form of the notice of sale, which permits the lumping together of a group of lots, their total valuation, and the total of the liens against them. Such a group listing would defeat the purpose of the advertising, which is to inform the propsective buyers of the taxes, assessments, etc., unpaid on each forfeited unit of property carried on the tax lists and duplicates.

We conclude that the notice of sale in the instant case did not meet the requirements of Section 5751, General Code.

Proceeding now to the sale. Section 5752, General Code, authorizes and prescribes how the sale shall be conducted. It is in part:

"The auditor in each county, on the day set for said sale shall attend at the court house and offer for sale *the whole of each tract of land as contained in the list heretofore provided for,* at public auction, to the highest bidder for an amount sufficient to pay the taxes, assessments, penalties, interest and costs which stand against it. *He shall offer each tract separately, beginning with the first tract contained in the list.* If no bid is received for any of said tracts in an amount sufficient to pay the taxes, assessments, penalties, interest and costs which stand against it, the auditor may offer such tract for sale forthwith, and sell it for the best price obtainable, irrespective of the amount of taxes, assessments, penalties, interest and costs due upon it." (Emphasis ours.)

Various sections of the Code provide for the creation and the use to be made of delinquent land lists. Some of these sections establish the predicate for forfeiture proceedings. The lists contain a description of each *taxable unit of property,* the name of the person in whose name it is listed, and the amount of taxes, assessments and penalties due thereon. The lists in the instant case properly listed each lot separately.

If we are to give effect to the directions in the statute that "he shall offer each tract separately, beginning with the first tract contained in the list," we must conclude that there was a failure to comply with the requirement, because each tract contained in the list was an individual, separately-taxed lot which had been forfeited. Here it is obvious that the word "tract" was meant to apply to a "lot."

Section 5757, General Code, provides:

"If any of such forfeited lands are sold for a greater sum than the amount of such tax, assessment, interest, penalty, and costs of sale, the county auditor shall charge the county treasurer separately in each case, in the name of the supposed owner, with the ex-

cess above such amount. The treasurer shall retain such excess in the treasury for the proper owner of the forfeited lands, and upon demand by such owner, within six years from the day of sale, shall pay the excess to him.''

This section clearly means that the excess received on the sale of *each taxable unit*, whether it be a lot in a dedicated allotment or a farm described by metes and bounds, shall be held for the former owner. It is difficult to see what fair yardstick could be used to carry out the terms of this statute if several lots were permitted to be sold in bulk for one lump sum, when the lots had different valuations and different tax delinquencies. In this section the word ''lands'' was clearly meant to apply to a single lot.

In determining the question whether a statute is mandatory, consideration is generally given to whether it relates to a matter of substance, affects substantial rights, and is of the essence of the thing required to be done. In the case before us, the thing to be done was the sale of a forfeited piece of real property, to secure to the taxing unit the money due on it, and to hold any excess for the former owner. The sale directly affected the rights of the political subdivision, as well as the rights of the former owner. The sale of a single taxable unit to secure payment of delinquent taxes was of the essence of the thing required to be done. The statute prescribes the procedure and in our view is mandatory.

It is our conclusion that, for the failure to follow the statutes in the manner indicated above, the purported sale is void, and the deed should be cancelled. It will be so ordered.

*Decree for appellee.*

HUNSICKER, P. J., and STEVENS, J., concur.

(Decided February 21, 1952.)

ON RECONSIDERATION.

Doyle, J. The following language appears in the opinion of this court in the above-entitled case: "the purported sale is void, and the deed should be cancelled."

We have used the word "void" in the sense that the sale was a nullity when attacked by the former owner of the forfeited land within a period of one year from the date of the sale. We are not called upon to decide, nor do we decide, that the deed was void for all purposes and could be attacked by others than the former owner, nor are we called upon to determine whether the one-year limitation in Section 5762-1, General Code, would apply in similar circumstances.

We do not attempt to state the law as to any other description of persons than a former owner of delinquent lands who has brought his action within one year from the time when the deed was filed for record.

Hunsicker, P. J., and Stevens, J., concur.